The final case on our call is agenda number 11, case number 1-2-3-5-2-1, Jane Doe a minor et al. v. Chad Coe et al. Mr. Reisses, would you please proceed? Thank you. Good afternoon. May it please the Court and the Council. My name is Mike Reisses. I'm here today on behalf of Defendants Appellants Aaron James and the First Congregational Church of Dundee. Plaintiffs brought suit against defendants based on the sexual misconduct of Chad Coe while he was a youth pastor at the church. Plaintiffs' claims were based on Coe's hired supervision and retention and the church's too-adult policy. The trial court granted a Section 296.5 motion based on plaintiffs' failure to adequately plead the defendants knew or should have known of Coe's sexual proclivities. The appellate court in a split decision affirmed the dismissal of the retention claim but reinstated the hiring claim and also reinstated the supervision claims based on the church's failure to enforce the too-adult policy and went on to say, quote, regardless of defendant's actual or constructive knowledge of Coe's potential, I'm sorry, predatory potential, close quote. That's paragraph 99 of the opinion. Now we all know that Illinois is a fat pleading jurisdiction. I think I heard it earlier today in another case. Regardless of the theory, plaintiffs had to plead facts to show that defendants were on notice of Coe's unfitness. Otherwise the assault would not have been reasonably foreseeable. If we are correct, the judgment below cannot stand. Now until this case, our courts have held that a plaintiff must allege that the employer was on notice, that the employee was unfit for the position at the time of hiring, retention, or the failure to supervise. In one of those cases cited in our brief, Hills v. Ridgeview Little League Association, the court, relying on section 317 of the restatement section of TORS, described it in terms of the employer's knowing or having reason to know both of the necessity and the opportunity to exercise control over the employee. Now we submit that the appellate court erred first in drawing a distinction between supervision on the one hand and hiring and retention on the other hand regarding notice of unfitness. The appellate court recalled that notice was not an element for the claim of negligent supervision. But the tort of negligent supervision is not confined to the employer-employee relationship. It also exists outside the relationship. And where employment is not involved, notice is required. For example, to be liable for negligent supervision, the law requires that parents be on notice of specific instances of prior misconduct by the child and that parents have the opportunity to control the child. Again, both the necessity and the opportunity to exercise control. This court should now hold that the tort of negligent supervision, the same as the torts of negligent hiring and retention, requires notice of the employee's unfitness for the job. There is no rational basis to require notice as an element for hiring and retention. Mr. Reese, you argue that the allegation that a cursory Google search would have revealed that co-visited pornographic websites, et cetera, right? Well, we take issue with that. You do. In fact, you take issue with it and say it's absurd that it would have. It's implausible. And by the way, if you do Google this, I mean, look. But here's my question. It really goes to the standard because the purposes of a 2-6-15 motion dismissed, don't we have to take all the allegations as true? Without conducting a Google search and seeing which way it goes? Well, the plausible allegations, if in a case, a very different case than this one, if someone alleged that the earth was flat, you wouldn't say, well, that's beyond the scope of a 2-6-15. All right? I mean, there are certain allegations that are implausible. And to say, I mean, in terms of negligent hiring, and that at least is one claim where we know that notice is required. Notice of unfitness is required. So we're not going to talk about supervision for the moment. But for negligent hiring, there was no allegation that if we had done a background check, we would have come across anything criminal or any prior relationship with children. It was all a matter of, well, if you did a Google search, you would have found out that he had this online history of going to pornographic sites. Well, first of all, he was using a username. I'm not sure how we were supposed to necessarily know the username from the Google search. And secondly, do a Google search. Do a Google search of Chad Cohn. I've done it. I think the plants must have done it. If you do a Google search now, you're going to find recent stories about the prosecution, the conviction, the sentence, the lower court opinion. If you do the Google search, nothing comes up about him going to these different websites. It's not there. Just as it wouldn't be there if you alleged that the earth was flat, and we know it's not flat. I mean, the court can take judicial notice of what happens online. But isn't the fact that you would even say you did a Google search, doesn't that support the foundation of in a motion to dismiss, we have to take it as true? I mean, isn't that something to be argued later that, hey, this is a, there's, whatever the name was, Blue's Got 88 or whatever, or even Googling his name, isn't that a question of fact? Don't we have to take the allegation as true? We're at the motion to dismiss. You can take judicial notice. I think you can take judicial notice. That the earth is flat. That the earth is not flat. Or that, I'm sorry, it's getting late today. But what I'm saying is you can take judicial notice of what a Google search would show, and it wouldn't show that. And if you do it now, it won't show it. All right? That's all I'm saying. And the appellate court, I think, the plaintiffs were able to lead the appellate court to believe that if they, you know, if we had just done this search, all of this bad stuff would have come up. It's, you know, if somebody once said that the Internet is forever, well, I'll tell you what. It's not there. If you look, I understand the purpose of 2615, you're supposed to be confined to the four corners of the complaint. But you are also allowed to take judicial notice of facts. And there are cases, I think, we have cited on that, in terms of being able to take judicial notice. On negligent supervision counsel, you argue that they have to have knowledge, particularly on fitness, to be negligent. That's right. On fitness for the position, yes. But wouldn't a supervisor be negligent if they failed to notice the supervised employee acting in an unfit manner? Regardless of whether they had prior notice? I don't think I disagree with that. I'm not – I think that before we get to the issue of what was pled here, I think we do have to know what the standard is. And I think your question is really going more to the issue of, well, did we know there was something unfit about him because he was alone with Jane Doe in his office on three occasions, or the confirmation incident where he had girls sitting on his lap. You would have to have – we would have to know about those incidences, I guess, of unfitness. Well, aren't there allegations in this complaint that they did know about that? There's no allegation that we knew about the confirmation incident, if we want to talk about that for the moment. Well, isn't there an allegation that maybe a mandated reporter or one that should know made some observations and went to the pastor and was supposed to? And we don't know what that – you know what? We don't know what that interaction was. We don't know what that interaction was because it was only described as, quote, inappropriate, close quote. We don't know what it was. But on a 2615, aren't we supposed to let all those inferences run with the pleader, with the plaintiff? Well, it's a conclusory to be able to say – I mean, we're left to guess as to what it was. Was it something as simple as a hug? Was it something as simple as giving her a piggyback ride? There's a whole range of behavior that is set out in the complaint as far as what could be considered inappropriate. And all we're saying is that to know whether the conduct would have put us on notice that he was unfit, you have to know what the conduct was. And all we know is it was, quote, inappropriate. And this is – Inappropriate was used with a capital I, right? Yes, it was. And isn't that a defined term with a definition? Yes. Inappropriate content, inappropriate displays of affection. Piggyback rides. Sexual harassment, sexual exploitation. Sure, it can be piggyback. It can be a whole range of behavior. Right, but again, we're at the motion to dismiss stage. I mean, I understand the argument if it's inappropriate behavior, small I. But they're using it as a defined term that points you to what that inappropriate behavior was. And that behavior is – but that inappropriate behavior is a whole range of behavior. It's not just one thing. And we're left to guess as to what behavior it was. And then the – and even if we did know what it was, then you would have to make a – you would have to be able to determine whether the violation of the two-adult policy or the violation of the safe church policy would make the – give us notice that the – that he was unfit for employment. We don't even have the first step because we don't know what the conduct was. And it's not as if the information was beyond the point of – Jane Doe knows what happened at the vacation Bible study with the interaction that she had with Chad Coe. She knows what, if anything, happened on those three occasions in Chad Coe's office when Pastor James walked in. She would know what would have happened on different points over two years on the premises of the church. She knows that. And yet Plaintiff never pled what that conduct was, what that behavior was. How can this court say today that we knew or should have known that he was unfit when the court doesn't even know what the behavior was? I think that's the problem here, that the appellate court correctly, we submit, applied with regard to the notice rule in affirming the dismissal of the retention claim but not in applying that same notice requirement to the negligence supervision claims. Whether we're talking about supervision or earlier in time, the hiring, or later in time, the retention, all three torts are based on a failure to exercise ordinary care. But there's no principled way to require notice before employment starts and when deciding whether to terminate but also while the employment relationship is ongoing. The first point I'm trying to make here is that you can't dispense with the notice requirement the way that the appellate court did in a way that would be consistent with how the notice requirement is applied at negligent hiring, as Justice Thomas was raising before, or later on with negligent retention. Notice applies outside the employment relationship for negligent supervision but also for the closely related torts of hiring and retention within the employment relationship. It is the difficulty of foreseeing criminal misconduct that justifies the notice requirement for supervision as well as for the closely related torts of hiring and retention. As the Restatement Second of Torts, Section 302 recognizes, a person has greater reason to anticipate ordinary negligence, which this case does not involve with regard to JADCO, than criminal conduct, and that is true regardless of whether the duty is based on supervision or a closely related tort. We submit that the appellate court also erred in holding that the plaintiff stated a cause of action for supervision based on the two-adult policy. Now plaintiff set forth in paragraph 58, we were already talking about it earlier, a number of examples of what the two-adult policy considered to be inappropriate as far as displays of affection. I'm sorry, of affection, of affection, inappropriate with a capital I. Everything from piggyback rides to the tickling to hugs to behavior far more problematic. We can all understand why the church adopted that policy. But the two-adult policy is not evidence that a particular employee or volunteer is dangerous. Although the policy might view predators and non-predators as equally suspect, Illinois case law does not. What is generally foreseeable does not satisfy fact-clearing requirements for showing that a particular assault was reasonably foreseeable. Even under the voluntary undertaking theory alleged by the courts, the particular assault giving rise to the suit had to be reasonably foreseeable. We did not assume a voluntary undertaking to protect against assaults that were not reasonably foreseeable. Plaintiff essentially alleged three violations of the policy. One was 2011 confirmations. All I'll say about that, we talked about it just a moment ago, is that there was no allegation that we actually even knew about the incident before the sexual assault took place. Plaintiff didn't allege that James saw the incident or that we were told about the incident. And when plaintiffs did allege that the adults complained, it was only at a church meeting held after Coe was arrested on July 3, 2013. Plaintiff's argument, if accepted, would make virtually any assault reasonably foreseeable regardless of how harmless or innocuous the alleged violation may have appeared at the time. Case in point, assuming there was a violation of the two-adult policy when Pastor James saw James Doe in Coe's office, that violation by itself did not show an improper interest, much less make the assault reasonably foreseeable when it took place years later. Plaintiff did not allege that James saw any contact between Coe and Doe, inappropriate with a capital I or otherwise, or anywhere else on the premises in the two years leading up to the assault. Finally, going to the issue about the interaction that was inappropriate at the Vacation Bible Study Program, it was vague as to what was reported. Liabilities should not be based on speculation or be left to the imagination. Without facts describing what the interaction was, not just that it was inappropriate, but what the interaction was, facts within the plaintiff's knowledge, the court cannot say that the assault was reasonably foreseeable. The case law makes clear what needs to be alleged. We cited a couple of cases as examples. Doe v. Demofsky, for example, the plaintiff alleged that the female student and her mother provided defendants with specific information concerning a course of sexual harassment and abuse by a school employee. Very different from this case. We knew what was being alleged against us. The plaintiff and her employees witnessed the touching. Again, very different than what we have here. When there's no allegation, what we supposedly saw, were told, knew, or should have known before Coe assaulted Doe. Nothing put us on notice of his unfitness when plaintiffs never identified what the inappropriate behavior was that we knew or should have known about before the assault. Now, we don't dispute that plaintiffs alleged in graphic detail that Chad Coe was unfit for his position. We don't argue otherwise, but the second amendment complaint simply was to avoid a specific fact showing that we saw or were told of behavior other than just calling it inappropriate that should have raised the suspicion that Coe was a pedophile or that he had particular fitness for employment. Finally, we submit the appellate court properly affirmed the dismissal of the willful and wanting counts. If plaintiff could not satisfy the notice requirements in support of their negligent claims, they certainly could not plead facts to support willful and wanting claims based on hiring and suspicion. I see my time is up if I can just summarize my way to conclude. Plaintiffs didn't state a cause of action for negligent supervision. Absent facts showing notice of Coe's unfitness. Plaintiffs did not state a cause of action for negligent hiring. Absent facts showing that a background check would have disclosed his unfitness in May 2009 and three, plaintiffs did not plead facts to support their willful and wanting claims. For all the reasons set forth in our briefs, we ask you to reverse the appellate court and affirm the trial court in its entirety. Thank you, Mr. Bresos. Mr. Lyons. May it please the Court. Counsel, I represent the plaintiffs today and here with me are Co-Counsel Frank LaPuma and Stephanie Sapolsky. I can start off with the Google search and I welcome the opportunity for this court to take judicial notice of how Google works. I trust this court recognizes how modern technology works. Did you identify yourself, Counsel? I did. My name is Kevin Lyons. I apologize if I did not. I wanted to get to this Google point pretty quickly. So apparently Defense Counsel did not run a Google search until recently. They're claiming that there is nothing on the website when you type in Chad Boznan. You find his Blue Scott 88 handle. You type in Blue Scott 88 and as you sit here today, you don't find anything. One, that's not true. I actually will give him in discovery the document that I pulled Sunday during my Google search. Admittedly, that took me three and a half to four minutes. Back in 2013, when we did this search and we typed in Chad Boznan and then we found his Blue Scott 88 handle, that is when we uncovered sites such as Newby News, Motherless, Would You Hit This, Rape My Body, Rape My Melons, and Date Hookup. That is part of the public sector. He did nothing. James did nothing. FCC did nothing. That is the allegation. At the very least... If you put in a name, Google will tell you what sites a person has visited? If you type in Chad Co, you would find Blue Scott 88 handle. When you type in the Blue Scott 88 handle, you will see that he is registered on porn sites that include child pornography. It is a two-step process. If you type in my name, you can discover my Twitter handle? I could, if you have a Twitter handle. If you have a Facebook account, I might be able to find that as well. If you are using an alias, I can type that alias to see what that alias is using. It takes about 30 seconds. The reason why we don't have Chad Co's current information, and yes, we are going to see his conviction, we are going to see the recent reports of what happened to him, is because he hasn't been using those handles, because he's been in a criminal proceeding for the last four and a half years, and he was convicted of rape, and he's been in prison, so I'm assuming that he's not using it. I note that the Pelot Court footnote mentioned that civilly we're talking about rape. When I'm criminally charged, there's assault and there's abuse. But also part of the public record, Chad Co, he actually pled and stipulated to penis-vagina penetration. That's where we ended up on June 14th, the rape, in the church, during vacation Bible school. Now, counsel wants to know what happened before that, that would have put somebody on notice, which is not even the standard, depending upon what we're talking about, because obviously if we're talking about duty, we're talking about reasonable foreseeability when we're looking at the custodial caretaker. If we're talking about approximate cause, it's an excess. But there is one fact that I think speaks volumes. Chad Co showed what is known as a rainbow blowjob party movie, wherein high school girls gave successes to a play show to an adult male. That movie was shown to the youth in the church on church equipment. The question isn't whether James knew or FCC knew. The question is what would a reasonable, prudent church do? What would a reasonable, prudent pastor do? It's an objective standpoint. They want to continue to turn it to a subjective standpoint. I submit that no reasonable church would allow, much less the technology, if they actually followed the internet safety guidelines that would not have allowed this technologically to have occurred, where you can actually show pornography in a church, there is no reasonable church that would allow this to happen. Does this go to your negligent supervision count? How does this go to the negligent hiring or the negligent retention? If we break down the causes of action, I don't want to gloss over. What can happen is you can end up conflating reasonable foreseeability under duty for negligent supervision, the nexus for the approximate cause, and then the actual elements of new or should have known for negligent hiring and for negligent retention. For negligent supervision, what we have to do is establish the duty. I believe that we establish that duty, and they're not arguing that duty. When they throw out the word reasonably foreseeable, that reasonable foreseeability in this context has always gone to the duty element, whether we're going to impose a duty as a matter of law. If you breach that duty, which obviously we've alleged, and there are damages that are approximately caused, you have negligent supervision. But apart from notice to the church and to the pastor, they would have no responsibility if this guy just raped some girl in the church. Is that correct? I don't think that's correct because the rape occurs in the church. When you're talking about notice, on notice, if we're talking about approximate cause and we're talking about the nexus, then we have to look at what kind of occurred before the rape that would make that rape approximate. So this fact that I brought up here about the movie goes to the objective standpoint. And that objective standpoint not only applies to the reasonable foreseeability on the duty side, but also on the approximate cause side. Because otherwise what's going to happen is you're going to have people putting their heads in the sand or turning a blind eye. That may be true on the supervision aspect, but we're talking about hiring. So we've got to dial it back to if you hire Joe Schmoe, what do you know about this guy when you hire him and what should you know? That's correct. So I was working my way back from the rape and going backwards. It's dangerous. Hindsight's 20-20. But we have to look at a point in time when these acts took place, when the hiring took place, don't we? Sure. And at the time that he was hired, what our pleading alleges is that all they had to do was run a Google search to find out that he was on that list. We found 1, 2, 3, 4, 5, 6. So at that time of hiring, that was discoverable. But beyond that, they had to do something. We allege that they did nothing. So at the time of hiring, they actually had a duty to use reasonable care when they were hiring this man. What is that reasonable care? Well, what would a reasonable person do when they're hiring somebody who's watching you? Now, there is a safe church policy that's in place, and we know what that says. That says you have to do background investigations.